**AFFIRM as Modified; Opinion Filed March 4, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00321-CR

## HONGOLI PAN, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4
Collin County, Texas
Trial Court Cause No. 004-86330-2012

## MEMORANDUM OPINION
Before Justices Moseley, Bridges, and Evans
Opinion by Justice Moseley

A jury convicted Hongoli Pan of criminal trespass and the trial court assessed punishment at 180 days in jail, probated for two years, based on an agreement between the parties. Pan raises two issues on appeal: (1) he was denied due process when he was cited for trespass only an hour after the written warning was issued; and (2) the evidence was insufficient to prove the elements of the offense. The State brings a cross-point requesting the judgment be modified to delete an order to pay court appointed attorney's fees. The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We modify the trial court's judgment to delete the order to pay court

appointed attorney's fees and affirm the judgment as modified.

Defendant is a graduate student at the University of Texas at Dallas. The complaining witness, Kendra Boyd, worked at the University library. In the fall of 2011, Boyd noticed defendant staring at her and following her around the library. Boyd became concerned and, in December 2011 or early January 2012, she called the campus police to report defendant's behavior.

Afterwards, a police officer told defendant in Boyd's presence to stay away from Boyd. Boyd, her supervisor, and her boyfriend also told defendant to stop following her and to stay away from her, but defendant continued to stand near Boyd when she was at the library and follow her. By July 2012, defendant was following Boyd four or five days a week and she was scared. She called campus police again to report the incidents.

Lieutenant Kenneth McKenzie, Jr. began investigating the complaint. He informed the Dean of Students office that a criminal trespass citation would be issued if necessary. On Friday, July 27, 2012, around 11:00 a.m., McKenzie went to the library to tell Boyd about the investigation. Boyd told him defendant was in the library and had been following her that day.

McKenzie and Officer Mike Raines found defendant inside the library and escorted him outside. They gave him an oral and written trespass warning regarding the library. The warning stated that if defendant returned to the library on any future date without approved official business he could be arrested.[1] McKenzie explained the approval had to come from the chief of police and the warning was effective immediately. Defendant discussed the warning and attempted to return to the library, but McKenzie stopped him. Defendant eventually signed the

---

[1] The preprinted portion of the warning states in part: "By my signature below, I understand that if I remain, or return, to the UT Dallas campus on any future date without approved official business, I could be arrested and charged with Criminal Trespass . . .." Below this, the form is filled in indicating the warning applies only to the library between 6:00 a.m. and 6:00 p.m., Monday through Friday.

written warning and indicated he understood he was not to come back to the library. McKenzie also told defendant he had a meeting that afternoon with the Dean of Students for a disciplinary action.

Defendant then went to the student government office and spoke to the receptionist, Pierre Mandane, about the warning. Mandane told him the warning was an official document from the police and he should not go back to the library. Defendant tried to locate the Dean of Students to discuss the warning, but was told the Dean had left for the weekend. After that, defendant returned to the library trying to locate McKenzie and Raines to discuss the warning. He did not see the officers when he arrived at the library, so he entered the library and attempted to call the police from the lobby although he possessed his own cell phone at the time.

Boyd called police about 12:15 p.m. to tell them defendant was back inside the library. McKenzie had a patrol unit dispatched to the library. Officer Kristina Herrmann found defendant inside the library. She testified he was there without the effective consent of herself and campus police, who had a greater right to possession of the library than defendant. McKenzie arrived a short time later, confirmed that defendant had been inside the library, and instructed Herrmann to arrest defendant for criminal trespass.

In his first issue, defendant contends he was denied due process. He claims the trespass warning was improper and he was not given an opportunity to be heard.[2]

---

[2] In full, his issue states:

Was Appellant denied Constitutional Due Process of Law when a University of Texas at Dallas Policeman issued Appellant a citation a mere one hour after issuing Appellant a written warning when the warning was to become effective on a "later date," the warning proscribed Appellant from entering the University library except to conduct "approved official business" but failed to explain to Appellant the constraints of this term or warning at large, and the Appellant was never offered an opportunity to be heard prior to the deprivation of his rights?

A procedural due process analysis is two-tiered. First, we must determine whether the complaining party has a protected liberty or property interest. *See Ex parte Montgomery*, 894 S.W.2d 324, 327 (Tex. Crim. App. 1995); *Anthony v. State*, 209 S.W.3d 296, 304 (Tex. App.—Texarkana 2006, no pet.) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). And, if so, whether sufficient procedural safeguards are employed to assure the deprivation is not arbitrary. *Montgomery*, 894 S.W.2d at 327; *Univ. of Texas Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972)).

Citing *University of Texas Medical School at Houston v. Than*, 901 S.W.2d 926 (Tex. 1995), defendant argues he has a liberty interest in the pursuit of his education that must be afforded due process. In *Than*, a medical student was dismissed, following a hearing, from medical school for academic dishonesty. *Id.* at 928–29. The supreme court determined that a medical student charged with academic dishonesty faces serious damage to his reputation and also the loss of his chosen profession. *Id*. at 930. The court concluded the student had a constitutionally protected liberty interest in his graduate education that must be afforded procedural due process. *Id.*

In this case, however, the record does not show how the warning impaired defendant's pursuit of his education. Defendant was not expelled from the university. He was merely warned that entering the library between the hours of 6:00 a.m. and 6:00 p.m. Monday through Friday was forbidden. Defendant was not prevented from using the library at other times or prevented from attending any of his classes. Defendant's interest in his graduate education was

not implicated by the trespass warning. Thus, the liberty interest recognized in *Than* was not infringed upon in this case.

The record does not show defendant had a protected liberty interest in entering the library between 6:00 a.m. and 6:00 p.m. Monday through Friday. Thus, his procedural due process claim fails. We overrule defendant's first issue.

Defendant's second issue challenges the legal sufficiency of the evidence to support the conviction. He also asserts the trial court should have instructed the jury to consider whether defendant entered the library on official business.

We apply the appropriate legal sufficiency standard of review. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (U.S. 2012). In a legal sufficiency review, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames*, 353 S.W.3d at 860. This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Id.* We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

A person commits an offense if the person enters or remains on or in property of another without effective consent and the person (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so. TEX. PENAL CODE ANN. § 30.05(a). Notice is defined as an oral or written communication by the owner or someone with apparent authority to act for the owner. *Id.* § 30.05(b)(1), (2)(A). Effective consent includes consent by a person

legally authorized to act for the owner. *Id.* § 1.07(19). Owner means a person who has title to the property, possession of the property, or a greater right to possession of the property than the actor. *Id.* § 1.07(35).

There is evidence defendant was warned orally and in writing that he was not to enter or remain in the library between the hours of 6:00 a.m. and 6:00 p.m. Monday through Friday. This notice came from campus police officers who had a greater right to possession of the property than defendant. After receiving the warning, defendant left, but later entered and remained inside the library during the time period he was not permitted to enter the library.

Defendant argues that criminal trespass only occurs where the actor refuses to leave the property after being warned to leave. He contends he did not refuse to leave when he was first given the warning and only returned under the mistaken belief he was there on official business. After he returned, he asserts he did not intentionally or knowingly refuse to leave the library.

We reject defendant's contention that the offense can only be committed by remaining on the property after a request to leave. The express terms of the statute make it an offense to enter property of another without effective after receiving notice that entry is forbidden. TEX. PENAL CODE ANN. § 30.05(a). Furthermore, the evidence here indicates defendant returned and remained in the library after he was notified not to return to the library during specific times on certain days in the future. By returning to the library during the specified time period, defendant entered and remained on the property without effective consent and with notice that his entry was forbidden.

Defendant also argues he did not have notice that entry was forbidden because of alleged deficiencies of the written warning. However, there is evidence the officers told him he was not to enter the library during the specified times, that official business had to be approved by the

police chief or dean of students, and that the warning was in effect immediately. There is evidence that defendant attempted to return to the library immediately after he was given the warning, but McKenzie blocked his path, took out handcuffs, and told defendant he would be arrested if he entered the library.

Considering all the evidence (including that summarized above) in the light most favorable to the verdict, we conclude a rational trier of fact could have found defendant guilty of the offense of criminal trespass beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. We overrule defendant's second issue.

Defendant's alternative argument is that the trial court should have instructed the jury to consider whether he entered the library on official business. Defendant did not request this instruction or object to its omission in the trial court.[3] It would be improper for the trial court to single out a particular piece of evidence, such as the fact the warning exempted "approved official business" and defendant thought he entered the library on official business, in its instructions to the jury. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008) (outside statutorily recognized exceptions, trial court should avoid any allusion in jury charge to particular facts because jury might construe this as judicial endorsement or imprimatur). We conclude there is no error in the jury charge.

The State brings a cross-point seeking to modify the judgment to delete the order to pay court appointed counsel fees as costs. The judgment includes the following:

---

[3] Our first duty in analyzing a jury charge issue is to decide whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we apply the appropriate harm analysis depending on whether the error was preserved in the trial court. *See Jennings v. State*, 302 S.W.3d 306, 311 (Tex. Crim. App. 2010) (all jury-charge errors are cognizable on appeal, but unobjected-to error is reviewed for "egregious harm," while objected-to error is reviewed for "some harm."); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

It is further ordered that the amount paid to the defendant's appointed counsel is taxed against the defendant as costs in an amount determined by the Court as well as a one $25.00 Time Payment Fee, if applicable.

The State concedes the record does not support a finding that defendant's financial circumstances materially changed after the trial court determined he was indigent. Accordingly, the record does not support the order. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *Montgomery v. State*, No. 05-11-00236-CR, 2012 WL 3024222 (Tex. App.—Dallas July 25, 2012, no pet.) (not designated for publication). We sustain the State's cross-point.

We modify the trial court's judgment to delete the order assessing defendant's appointed counsel fees as costs. We affirm the judgment as modified.

/Jim Moseley/
JIM MOSELEY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
130321F.U05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HONGOLI PAN, Appellant

No. 05-13-00321-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4, Collin County, Texas
Trial Court Cause No. 004-86330-2012.
Opinion delivered by Justice Moseley.
Justices Bridges and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to delete the following sentence:

> It is further ordered that the amount paid to the defendant's appointed counsel is taxed against the defendant as costs in an amount determined by the Court as well as a one $25.00 Time Payment Fee, if applicable.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of March, 2014.

/Jim Moseley/
JIM MOSELEY
JUSTICE